CROWELL & MORING LLP
Thomas F. Koegel (CSB No. 125852, tkoegel@crowell.com)
Bruce J. Zabarauskas (CSB No. 248601, bzabarauskas@crowell.com)
275 Battery Street, 23rd Floor
San Francisco, California 94111
Telephone: (415) 986-2800
Facsimile: (415) 986-2827

Attorneys for Plaintiff E. Lynn Schoenmann as Chapter 7
Trustee for the Estate of James Paulett Charlton

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>JAMES PAULETT CHARLTON,<br><br>Debtor.<br><hr>E. LYNN SCHOENMANN, TRUSTEE<br><br>Plaintiff<br><br>- against –<br><br>PRISM PRIME. LLC, ENTER NET DEVELOPMENT CORP., and FUTURE NOW ENTERPRISES, LLC,<br><br>Defendants. | Case No. 04-32400 TEC 7<br><br><br>Adv. Proc. No. 06-3139<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF TRUSTEE'S MOTION FOR AN ORDER: (i) RE-OPENING ADVERSARY PROCEEDING; (ii) ENTERING DEFAULT ORDER PURSUANT TO SETTLEMENT AGREEMENT; AND (iii) APPROVING THE PROTOCOLS FOR SALE OF COLLATERAL PURSUANT TO TERMS OF SETTLEMENT AGREEMENT AND SECURITY AGREEMENT**<br><br>Hearing Date: To Be Determined<br>Courtroom: 23<br>Judge: Hon. Thomas E. Carlson |

# I

# INTRODUCTION

E. Lynn Schoenmann (the "Trustee"), the Chapter 7 Trustee of the estate of James Paulett Charlton (the "Debtor"), submits this Memorandum of Points and Authorities in support of her Motion for entry of an order: (i) re-opening this adversary proceeding, which was erroneously closed by the Clerk's office; (ii) entering the "Default Order" as defined in, and pursuant to the terms of, the settlement agreement entered into in connection with this adversary proceeding and previously approved by this Court (the "Settlement Agreement"); and (iii) approving the protocols for the sale of the Collateral (as hereafter defined).

As set forth in more detail below, Larry Anderson and the Anderson Entities (as hereafter defined) are in default of their obligations to the Trustee under the Settlement Agreement. The Settlement Agreement resolved the estate's claims that Larry Anderson and the Anderson Entities were the beneficiaries of a fraudulent transfer of Debtor Paul Charlton's ("Debtor" or "Charlton") interests in school software companies. These settlement obligations are secured by a security interest in the copyrights to the Zangle Software and 100% of the stock interests in C Innovation, Inc. ("CII Stock"). (The Copyrights and the CII Stock are hereafter collectively referred to collectively as the "Collateral.") Prompt relief to allow the Trustee to proceed against the Collateral as requested here is critical, as Anderson has attempted to transfer interests in the school software and the companies back to entities controlled by Charlton, who in turn has placed a newly created entity in bankruptcy in the Central District. With the Trustee having received relief from stay from Judge Neiter in the Central District, she seeks the Court's immediate authorization to implement the sale procedure approved by the Court in 2008 in approving the Settlement Agreement.

Under the Settlement Agreement, in order to foreclose upon the Collateral, the Trustee is required to take the following steps: (i) file a "Joint Stipulation Regarding Judgment" with the Court; (ii) obtain entry of an "Order Entering Joint Stipulation Regarding Judgment;" and (iii) obtain entry of the "Default Order" (as defined in the Settlement Agreement). It is only after these steps are followed, that the Settlement Agreement provides for the filing of protocols for the sale

of the Collateral with this Court, which is consistent with the requirements of Article 9 of the UCC.

In the instant case, after the Trustee filed the Joint Stipulation and obtained entry of the Order Entering Joint Stipulation Regarding Judgment, but prior to the Trustee obtaining entry of the Default Order, the Clerk's office erroneously closed the instant adversary proceeding. As the Trustee was exploring possible mechanisms for enforcement of her interest, and the identity of prospective buyers, the Anderson-to-Charlton reverse transfer occurred and the Central District bankruptcy commenced. Now, with relief from the Central District granted, the Trustee seeks entry of an order reopening this adversary proceeding, entering the Default Order and approving protocols for the sale of the Collateral. With the sale completed, the Trustee will be able to bring this very long running case to a successful close.

## II

## FACTS

### A. Background

On August 24, 2004 (the "Filing Date"), the Debtor filed a voluntary Chapter 11 petition with this Court. On April 1, 2005, this Court entered an order appointing the Trustee as Chapter 11 trustee of the Debtor's estate. On April 27, 2006, this Court entered an order converting the Debtor's case to Chapter 7 and appointing the Trustee as Chapter 7 trustee of the Debtor's estate.

On August 23, 2006, the Trustee commenced the above-captioned adversary proceeding (the "Adversary Proceeding") by the filing of a complaint, which was thereafter amended on November 18, 2008 (the "Complaint"). The Complaint asserts that prior to the Filing Date, the Debtor fraudulently conveyed his interests in companies owning, *inter alia*, the Copyrights (as hereafter defined) to companies owned and/or controlled by Larry Anderson ("Anderson"). A copy of the Complaint is annexed as <u>Exhibit A</u> to the Declaration of Thomas F. Koegel in support of this motion (the "Koegel Dec.").

### B. The Settlement Agreement And Security Agreement

On or about May 15, 2008, the Prism Prime, LLC, Enter Net Development Corp. and Future Now Enterprises, Inc. (collectively, the "Anderson Entities"), Anderson and the Trustee

entered into the Settlement Agreement. A copy of the settlement agreement is annexed as <u>Exhibit B</u> to the Koegel Dec. By order dated September 2, 2008 (the "Settlement Order"), this Court approved the Settlement Agreement, which settled the Adversary Proceeding. A copy of the Settlement Order is annexed as <u>Exhibit C</u> to the Koegel Dec.

The Settlement Agreement provides that the Anderson Parties and Anderson will pay the Trustee the sum of $2,600,000 over time, plus 10% of the net consideration from any sale of the stock in C Innovation, Inc. and the Copyrights. (<u>Exhibit B</u> at ¶¶ 1-2).[1] The obligations of Anderson and the Anderson Entities under the Settlement Agreement were secured by a security interest granted to the Trustee in the Copyrights and 100% of the stock interests in C Innovation, Inc. (the "CII Stock") pursuant to a security agreement (the "Security Agreement") entered into between the Anderson Entities, C Innovation, Inc, and the Trustee. A copy of the Security Agreement is annexed as <u>Exhibit D</u> to the Koegel Dec. (Exhibit D at ¶ 1). The Trustee's security interest in the Collateral was duly perfected on September 29, 2008 through the filing of the Security Agreement in the United States Copyright Office.[2]

Paragraph 5(c) of the Security Agreement provide:

> **The Grantors own all their interests in the Collateral absolutely and no other person other than the Secured Party has, or, to the Grantor's knowledge claims an ownership interest in the Collateral.**

(Emphasis supplied). (<u>Exhibit D</u> at ¶ 5 (c)).

Paragraph 6 of the Settlement Agreement provides that the Trustee shall be notified in writing at least 30 days prior to any sale or transfer of the Collateral, and that any such sale shall be subject to the Trustee's security interest in the Collateral. (Exhibit C at ¶ 6). Paragraph 2 of the Settlement Agreement provides that any outstanding obligations due under the Settlement Agreement shall be paid from the proceeds of any such sale. (Exhibit C at ¶ 2).

---

[1] References to exhibits are to the exhibits annexed to the Koegel Dec.

[2] *See In re Auxiliary Power Co.*, 303 F.3d 1120 (9th Cir. 2002)("there can be no question that, when a copyright has been registered, a security interest can be perfected only by recording the transfer in the Copyright Office.") *In re Franchise Pictures LLC*, 389 B.R. 131 (Bankr. C.D. CA. 2008) (same).

Case: 06-03139    Doc# 103    Filed: 06/20/11    Entered: 06/20/11 16:58:07    Page 4 of 11

The Settlement Agreement contains a multi-step process prior to the Trustee being permitted to sell the Collateral following a default under the Settlement Agreement. Paragraph 10 of the Settlement Agreement provides that if Anderson and the Anderson Entities fail to cure an event of default under the Settlement Agreement, the Trustee shall file the Joint Stipulation Regarding Judgment with the Court. Following the filing of the Joint Stipulation, the Trustee is required to obtain entry of the "Order Entering Joint Stipulation Regarding Judgment" in the form attached to the Settlement Agreement as Exhibit I. Following entry of the "Order Entering Joint Stipulation Regarding Judgment," ¶ 10 of the Settlement Agreement requires the Trustee to obtain entry of the "Default Order" in the form annexed as Exhibit J to the Settlement Agreement.[3] (Exhibit C at ¶ 10).

---

[3] Paragraph 10 of the Security Agreement states:

> In the event that Anderson, Prism Prime, Enter Net and/or Future Now fail to demonstrate the absence of or alternatively fail to cure any outstanding default or material breach alleged by the Trustee as to any of the obligations described in Paragraphs 1 through 4 of this Agreement, and the Trustee, in accordance with the terms and provisions of this Agreement, files, and the Bankruptcy Court enters the Joint Stipulation in the form of the "Order Entering Joint Stipulation Regarding Judgment" in the form attached hereto as Exhibit "I" hereof (the "Order") and thereafter enters the aforesaid "Order" in the form attached hereto as Exhibit "J" hereof (the "Default Order"), the Trustee may exercise her remedies on the Security Interest in Ownership and the Security Interest in Copyrights, which shall be conducted in a commercially reasonable manner consistent with Section 9-627 of Article 9 of the Uniform Commercial Code. Upon obtaining the Default Order, the Trustee shall schedule a hearing and submit to the Bankruptcy Court for approval, on seven (7) days prior written notice to the other Parties hereto, a proposed protocol for the sale, transfer and disposition of the Collateral ('the "Protocol"), which Protocol shall include:
>
> (a) provision for the application of any proceeds realized (i.e., first, in payment of the reasonable expenses of sale; second, in satisfaction of any unpaid and outstanding Settlement Payments; third, in satisfaction of the Contingency Settlement Payment; and fourth, payment of all surplus proceeds to the Grantors (as herein defined));
>
> (b) reasonable notice provisions regarding the sale process;
>
> (c) Grantors' rights of redemption consistent with Section 9-623(a) and (b)(1) and (2) of Article 9 of the Uniform Commercial Code;
>
> (d) an accounting by the trustee following any such sale, transfer and disposition of the Collateral; and
>
> (e) procedure for establishment by the Bankruptcy Court of a deficiency judgment, if any, which may arise and remain against the Grantors, jointly and severally, resulting from the completion of the sale of the subject collateral.

It is only after the Default Order is entered, that the Trustee is permitted to exercise her rights to the Collateral. Specifically, after entry of the Default Order, the Trustee is permitted to schedule a hearing and submit to the Bankruptcy Court for approval, on seven (7) days written notice, a proposed protocol for the sale of the Collateral. (Exhibit C at ¶ 10).

### C. The Default Under The Security Agreement

Anderson and the Anderson Entities defaulted on their obligations under the Settlement Agreement by failing to make the $400,000 payment due on or before August 31, 2010. *See* Settlement Agreement at ¶ 1(b). *See also* Declaration of E. Lynn Schoenmann in support of the instant motion (the "Trustee Dec.") at ¶ 5.

As a result, on September 15, 2010, the Trustee filed the Joint Stipulation Regarding Judgment and on September 20, 2010, this Court entered the "Order Entering Joint Stipulation Regarding Judgment." The Joint Stipulation and September 20, 2010 order of this Court are annexed to the Koegel Dec. as Exhibit E and Exhibit F respectively). However, on November 15, 2010, which was subsequent to the entry of such order, but prior to entry of the Default Order, the Clerk's office erroneously closed the instant adversary proceeding. (A copy of the docket reflecting that the case was closed is annexed as Exhibit G to the Koegel Dec.)

### D. The Subsequent Transfers Of The Copyrights After Entry Of The Order Entering Stipulation Regarding Judgment

Notwithstanding that the Court-approved Settlement Agreement required that the Trustee be given 30 days written notice of any transfer of the Collateral, and that the outstanding obligations owed to the Trustee under the Settlement Agreement be paid from the proceeds of any sale of the Collateral, the Settlement Agreement was further breached on or about March 2, 2011, when the Copyrights were allegedly transferred to Vermont Equity Partners, LLC, an affiliate of the Debtor in this case without any prior notice to the Trustee. On that same day (March 2, 2011): (i), Vermont Equity Partners, LLC transferred an exclusive worldwide license in the Copyrights to Zangle, Inc., which is a company whose sole director is the debtor in this case, and which was formed less than two weeks earlier (February 21, 2011); (ii) Zangle, Inc.

6 MEMORANDUM OF POINTS AND AUTHORITIES ISO TRUSTEE'S MOTION TO REOPEN; A.P. NO. 06-3139

granted back to Vermont Equity Partners, LLC, a security interest in its licensing rights in the Copyrights; and (iii) Zangle, Inc. adopted a resolution authorizing it to file a voluntary Chapter 11 bankruptcy petition in the Central District of California. (Copies of documentation filed with the U.S. Copyright Office are annexed to the Koegel Dec. as <u>Exhibit H</u>, <u>Exhibit I</u> and <u>Exhibit J</u>, respectively). *See al*so Trustee Dec. at ¶ 3.

On March 17, 2011, Zangle, Inc., whose sole director is the Debtor in this Chapter 7 case, filed a voluntary Chapter 11 bankruptcy petition with the United States Bankruptcy Court for the Central District of California. (A copy of the Zangle, Inc. Chapter 11 petition is annexed as <u>Exhibit K</u> to the Koegel Dec.) On April 14, 2011, the Trustee filed a motion for relief from the automatic stay in the Zangle, Inc, bankruptcy case so that it could continue its efforts to seek to foreclose upon the Collateral before this Court pursuant to the terms of the Settlement Agreement and Security Agreement. On June 10, 2011, the Central District Bankruptcy Court in the Zangle, Inc. case entered an order (the "Lift Stay Order") granting the Trustee relief from the automatic stay for the purpose of, *inter alia*, permitting foreclosure upon, and the sale of, the Trustee's interest in the Copyrights. (A copy of the Lift Stay Order is annexed to the Koegel Dec. as <u>Exhibit L</u>).[4]

### III

### ARGUMENT

**A.  This Court Should Enter An Order Re-Opening This Adversary Proceeding**

Paragraph 10 of the Settlement Agreement contains a detailed series of steps which must be taken by the Trustee prior to conducting a sale of the Collateral, which includes entry of the Default Order subsequent to entry of the "Order Entering Joint Stipulation Regarding Judgment."

---

[4] At the Lift Stay hearing, counsel for Gary Loyd appeared and stated their position that Mr. Loyd or an entity in which he is a managing member or director holds an ownership interest in the Copyrights. However, counsel for Mr. Loyd in this Chapter 7 case was served with the Trustee's motion to approve the Settlement Agreement and did not object to such motion, which provided that the grantors under the Settlement Agreement were the sole owners of the Copyrights, and that they were granting a security interest in the Copyrights to the Trustee. (Copies of the motion seeking approval of the Settlement Agreement, the certificate of service of same and the creditor mailing matrix in the Debtor's bankruptcy case are annexed to the Koegel Dec. as Exhibit M, <u>Exhibit N</u> and <u>Exhibit D</u>, respectively).

It is only after the Default Order is entered, that the Trustee may seek court approval of protocols for the sale of the Collateral. (Exhibit B at ¶ 10.)

On September 20, 2010, the Court entered the "Order Entering Joint Stipulation Regarding Judgment." (Exhibit F). However, on November 15, 2010, the Clerk's office erroneously closed the instant adversary proceeding, which was prior to entry of the Default Order. (Exhibit G). Accordingly, in order for the Trustee to realize on the benefits of the bargain set forth in the Settlement Agreement, it is necessary for this adversary proceeding to be re-opened so that the Trustee may obtain entry of the Default Order, and Court approval of its proposed sale protocols.

### B. This Court Should Enter The Default Order

Paragraph 10 of the Settlement Agreement is also clear that following entry of the "Order Entering Joint Stipulation Regarding Judgment," the Trustee shall be entitled to obtain entry of the "Default Order" in the form annexed as Exhibit J to the Settlement Agreement. (Exhibit B at ¶ 10). There is no dispute that Anderson and the Anderson Entities defaulted upon their obligations under the Settlement Agreement, and despite the passage of over 9 months, neither Anderson nor the Anderson Entities have paid the outstanding amount due under the Settlement Agreement. *See* Trustee Dec. at ¶ 5. Additionally, as stated earlier, under the Settlement Agreement, the entry of the Default Order is a prerequisite to the sale of the Collateral. Accordingly, this Court should enter the Default Order.

### C. This Court Should Approve The Trustee's Proposed Protocols For The Sale Of The Collateral

Finally, ¶ 10 of the Settlement Order provides that following entry of the Settlement Order, the Trustee may, on seven (7) days written notice, submit a proposed protocol for the sale of the Collateral to the Court for its approval. (Exhibit B at ¶ 10). Accordingly, pursuant to ¶ 10 of the Settlement Agreement, the Trustee submits the following proposed protocols for an auction sale of the Collateral:

(i) An auction sale (the "Auction") of the Collateral shall be held before the Court on a date set forth in the order granting this motion. The Copyrights and the CII Stock will be auctioned both separately (i.e., both an auction of all the Copyrights together, and a separate auction of the CII Stock), (hereafter, the "Separate Bids") and an auction of all of the Collateral together (i.e., a single auction of the Copyrights and CII Stock) together (hereafter, the "Bulk Bid"). Specifically, the Trustee shall first conduct an auction of the Copyrights, then an auction of the CII Stock. Finally, the Trustee shall conduct the auction of the Copyrights and CII Stock together. The winning bid will consist of the greater of the: (i) aggregate of the Separate Bids; or (ii) the amount of the Bulk Bid.

(ii) As set forth in the proposed order granting the instant motion (the "Sales Procedure Order"), at the Auction, the Collateral shall be sold free and clear of any and all claims and interests to the Collateral as provided by California Commercial Code § 9617 and the Trustee shall be empowered to execute a transfer statement as provided by California Commercial Code § 9619 with regard to the auctioned property;

(iii) Only "Qualified Bidders" and the Trustee may bid at the Auction. In order to become a Qualified Bidder, a party must no later than three business days before the Auction: (i) identify the name, address, phone number and email address of the bidder; (ii) provide a deposit in the amount of $100,000 (the "Deposit") to the Trustee in immediately available funds (i.e., wire, bank transfer, certified check), which Deposit shall become non-refundable in the event that such bidder becomes the Highest Bidder or Second Highest Bidder (both as hereafter defined); and (iii) execute such documentation as required by the Trustee, pursuant to which the bidder agrees to be bound to the terms of the Sales Procedure Order. Notwithstanding anything to the contrary contained herein, the Trustee may, in her sole discretion, permit a party to become a Qualified Bidder less than three business days before the Auction. The Trustee shall hold all Deposits in a non-interest bearing account.

(iv) Within 5 business days after entry of an order approving these sale protocols, the Trustee shall provide written notice of the Auction and the terms thereof to all parties who, to the Trustee's knowledge, claim an interest in the Collateral. These parties consist of the Debtor, Anderson and the Anderson Entities, Gary Loyd, Vermont Equity Holdings LLC, Zangle, Inc. and SiCorp. The Trustee shall also provide such notice to any parties who have expressed an interest in the purchase of the Collateral.

(v) Prior to the Auction, the Trustee may enter into a stalking horse agreement with any purchaser, which shall be subject to higher and better offers and which shall be subject to Bankruptcy Court approval either prior, at, or subsequent to the Auction (the "Stalking Horse Agreement");

(vi) The amount of the initial bid at the Auction and bidding increments shall be set by the Trustee, provided however, that if the Trustee enters into a Stalking Horse Agreement, then the initial bid shall be equal to the purchase price provided for in the Stalking Horse Agreement;

(vii) Except for the Trustee, all bids at the Auction shall be on an all-cash basis and not subject to any financing or any other contingency. At the Auction, the Trustee shall be permitted to credit bid up to the outstanding amount due under the Settlement Agreement;

crowell moring
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
(949) 263-8400

(viii) Provided that the Trustee does not submit the highest bid at the Auction, at the conclusion of the Auction, the bidder with the highest bid (the "Highest Bidder") shall be declared the winner and be required to purchase the auctioned property for the amount of its winning bid. The balance of the purchase price (i.e., the winning bid minus the Deposit) shall be paid to the Trustee by the Highest Bidder in Immediately Available Funds no later than 30 days after the Auction, time being of the essence with respect thereto. In the event that the winning bidder fails to pay the balance of the purchase price within 30 days after the Auction, then the Trustee shall keep the Highest Bidder's Deposit as liquidated damages, and the Trustee or her counsel shall transfer the auctioned property to the party that submitted the second highest bid (the Second Highest Bidder"), in which case (i) the Second Highest Bid shall be required to purchase the auctioned property for an amount equal to the Second Highest Bid; and (ii) the Second Highest Bidder shall pay the balance of the purchase price (i.e., amount of the Second Highest Bid minus such bidder's $100,000 Deposit) to the Trustee in Immediately Available Funds no later than 30 days after the Auction, time being of the essence with respect thereto. In the event that the Second Highest Bidder fails to pay the balance of the purchase price within 30 days after being notified by the Trustee or her counsel that the Highest Bidder has defaulted on its obligations hereunder, and that the Second Highest Bidder is required to purchase the auctioned property, then the Trustee shall keep the Second Highest Bidder's Deposit as liquidated damages, and the Trustee shall conduct another auction on the same terms and conditions set forth herein. Upon receipt of payment of the purchase price, the Trustee shall execute a transfer statement pursuant to California Commercial Code § 9619;

(ix) Within three business days after the conclusion of the Auction, the Trustee shall return all deposits to Qualified Bidders except for the Highest Bidder and Second Highest Bidder. The Deposit of the Second Highest Bidder shall be returned by the Trustee within three business days after the Trustee receives the balance of the purchase price from the Highest Bidder.

(x) The proceeds from the Auction shall be distributed by the Trustee pursuant to the terms of the Settlement Agreement, the Security Agreement and the California Commercial Code, as determined by an order of the Bankruptcy Court, which shall provide, *inter alia*, that the proceeds of the sale be distributed in the following order – first, in payment of the reasonable expenses of sale, second, in satisfaction of the outstanding amounts due under the Settlement Agreement, third in satisfaction of the Contingency Settlement Payment, fourth, to any junior lien holders on the Collateral, and fifth the payment of any surplus to the Grantors, as defined in the Security Agreement. Within 30 days after distribution of the proceeds of the Auction, the Trustee shall file an accounting with the Bankruptcy Court of the proceeds received and distributions made therefrom. Following the distribution of the proceeds of the sale of the Collateral, the Trustee shall have the right to seek entry of a deficiency judgment, jointly and severally against the parties to the Settlement Agreement; and

(xi) Notwithstanding anything to the contrary contained herein, the Grantors under the Security Agreement shall have those rights of redemption provided in § 9623 of the California Commercial Code.

The Trustee submits that these protocols are fair and reasonable and satisfy due process because all parties who assert an interest in the Collateral have the opportunity to appear, be heard

and bid at the Auction. Additionally, the proposed sale protocols provide for notice to all parties who have expressed an interest to the Trustee or her counsel about purchasing the Collateral. Accordingly, the Court should approve the Trustee's proposed sale protocols.

## IV

## CONCLUSION

For the foregoing reasons, the Court should grant the instant motion and enter an order: (i) re-opening the above-captioned adversary proceeding; (ii) entering the Default Order; (iii) approving the Trustee's proposed protocols for the sale of the collateral; and (iv) granting the Trustee such other and further relief as is just and proper.

Dated: June 20, 2011  CROWELL & MORING LLP

By: _____/s/_____
    Thomas F. Koegel
    Bruce J. Zabarauskas

Attorneys for E. Lynn Schoenmann
Chapter 7 Trustee for the estate of
James Paulett Charlton

SFACTIVE-902305816.5